UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ENNIS R. PATTERSON, | ) | CASE NO. 1:18CV2096 |
| | ) | |
| Petitioner, | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | Magistrate Judge George J. Limbert |
| | ) | |
| WARDEN DAVID GRAY, | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Respondent. | ) | OF MAGISTRATE JUDGE |
| | ) | |

On September 6, 2018, pro se Petitioner Ennis R. Patterson ("Petitioner") executed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, which was filed with this Court on September 13, 2018. ECF Dkt. #1. Petitioner is currently incarcerated at the Belmont Correctional Institution in Chillicothe, Ohio and is seeking relief for alleged constitutional violations that occurred during his trial in the Cuyahoga County Common Pleas Court, where he was convicted of Kidnapping with sexual motivation and sexual violent predator specifications, and Gross Sexual Imposition with sexual violent predator specifications. *Id.*; ECF Dkt. #1; ECF Dkt. #8-1 at 11. On February 28, 2019, David Gray, Warden of the Belmont Correctional Institution (Respondent"), filed a return of writ.  ECF Dkt. #8.  Petitioner filed a "Response" to the return of writ, and a Traverse/Motion for Summary Judgment, parts of both which shall be considered as a Traverse. ECF Dkt. #9, 10, 12, 13.

Petitioner has also filed the following motions: "Motion to Ensure Proper Establishment of Subject Matter Jurisdiction" (ECF Dkt. #14); Motion for Bond (ECF Dkt. #16); "Motion to Expedite Judgment Due to Unforeseen Circumstances" (ECF Dkt. #19); and "Motion to Expedite Judgment Due to Unforeseen Circumstances (Amended)" (ECF Dkt. #23).

For the following reasons, the undersigned RECOMMENDS that the Court deny Petitioner's "Motion to Ensure Proper Establishment of Subject Matter Jurisdiction" (ECF Dkt. #14) and DISMISS his federal habeas corpus petition in its entirety with prejudice due to noncognizable and procedurally defaulted grounds for relief. ECF Dkt. #1.  In addition, the undersigned recommends

1

that the Court DENY AS MOOT Petitioner's above-mentioned motions.  ECF Dkt. #s 16, 19, 23.

## I.    FACTUAL HISTORY

The Ohio Eighth District Court of Appeals set forth the facts of this case on direct appeal. ECF Dkt. #8-1[1] at 76. These binding factual findings "shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6thCir. 1998), *cert. denie*d, 119 S.Ct. 2403 (1999). As set forth by the Eighth District Court of Appeals, the facts are:

> [*P4] On May 25, 2016, D.N. was babysitting B.T.'s and Z.T.'s children at B.T.'s house. D.N. testified that, as he was cooking dinner, he overheard D.D., one of B.T.'s children, discussing sexually explicit things with another child. Alarmed, D.N. demanded to know what D.D. was talking about. D.D. told D.N. that Patterson had touched his private parts while babysitting D.D., C.J., and a number of other children at B.T.'s house on April 16, 2016.

> [*P5] D.N. testified that he immediately tried calling D.D.'s grandmother, C.T., who actually showed up at the house a few moments later. After D.N. told C.T. what D.D. said, C.T. testified that she spoke to D.D., who repeated the story he told to D.N. Becoming extremely upset, C.T. walked over to Patterson's mother's house, where Patterson was staying. After having her knocks go unanswered, C.T. testified that she called B.T. and Z.T., telling them to come to B.T.'s house immediately.

> [*P6] C.T. testified that while she and D.N. waited for B.T. and Z.T. to arrive, she called and spoke to M.S., her cousin, on the phone asking her to come to the house. Around the same time, B.T.'s cousin, M.J., happened to stop by the house, during which time she also spoke to D.D. and learned about the allegations against Patterson.

> [*P7] Once B.T. and Z.T. arrived and learned what was going on, Z.T. spoke to D.D. and became enraged. Z.T. and C.T. testified that the adults discussed whether to call the police or go get Patterson themselves. C.T. testified that amidst this discussion, she independently decided to call the police.

> [*P8] C.T. testified that the first police department she was able to successfully contact was the Cleveland Metropolitan Housing Authority ("CMHA"). Dispatched to the scene for a report of unattended children, CMHA Officer Dustin Kubiak testified that he arrived to discover that the report actually concerned a sexual offense against a child. Following protocol, Officer Kubiak alerted the Cleveland Police Department ("CPD"), which handles sexual offenses. While waiting for the CPD to arrive, Officer Kubiak testified that he spoke with C.T. and one of the aunts on scene and, based on those conversations, went across the street to Patterson's mother's house and requested that Patterson come outside. While Officer Kubiak detained Patterson and escorted him to his patrol car, C.T.

---

[1] Citations to the State Court Record, ECF Dkt. #8-1, will refer to the .PDF page numbers rather than to specific exhibits or PAGEID numbers.

testified that Patterson looked at her and said, "I told them to tell those kids to leave me alone."

[*P9] Eventually, CPD arrived on the scene, took statements from most of the adults present, and placed Patterson under arrest. CPD was unable to take an initial statement from D.D., who was sleeping at the time. CPD subsequently transferred Patterson to jail.

[*P10] Over the next two days, police interviewed Patterson twice, thoroughly questioning him about his involvement with B.T., Z.T., and their children and the allegations against him. At the beginning of both interviews, Patterson signed a form waiving his Miranda rights and spoke freely to detectives during most of the two interviews. At some point during the second interview, Patterson expressed that he wanted to speak to an attorney. Despite Patterson's request, the detectives continued to ask Patterson questions, which he continued to answer. Patterson's trial counsel did not file a motion to suppress any statements made during either interview.

[*P11] Prior to trial, the trial court held a competency hearing for both D.D. and C.J., who were allegedly in the room when Patterson touched D.D. and is the daughter of M.J. The court found both children to be competent.

[*P12] At trial, the state called D.N., C.T., M.S., and Z.T., who all recounted fairly consistent versions of the events described above. Specifically, they all testified that when they individually spoke to D.D., his accounts to each of them were consistent. The state also called D.D. to testify. D.D. testified that on April 16, 2016, he was watching a movie with his cousins at B.T.'s house when Patterson entered the room naked. According to D.D., Patterson removed D.D.'s shirt and shorts and then squeezed his private parts. D.D. also testified that later that evening, he awoke to find Patterson threatening him with an extension cord and telling him not to tell anyone what happened. The state additionally called Officer Kubiak from CMHA, Officer Hess from CPD, and Detective Vowell from CPD's Sex Crimes and Child Abuse Unit. Those witnesses corroborated the events on May 25-26, 2016, and Detective Vowell discussed his interviews with Patterson subsequent to his arrest. Patterson's trial counsel thoroughly cross-examined the state's witnesses, but did not call any witnesses on behalf of Patterson. C.J. was not called to testify by either the state or Patterson.

[*P13] The trial court found Patterson guilty on both counts in the indictment and sentenced him to 20 years to life in prison, ordered him to pay the costs and expenses of the case, and found him to be a Tier III sex offender/child offender registrant. It is from this judgment that Patterson now appeals.

ECF Dkt. #8-1 at 66-69.

## II.   PROCEDURAL HISTORY

### A.   State Trial Court

In its May of 2016 term, the Cuyahoga County Grand Jury indicted Petitioner on one count of Gross Sexual Imposition in violation of Ohio Revised Code "("ORC") § 2907.05(A)(4) with a sexually violent predator specification, and one count of Kidnapping in violation of ORC §

3

2905.01(A)(4) with a sexual motivation specification and a sexually violent predator specification. ECF Dkt. #8-1 at 6-7.  Petitioner entered a not guilty plea to the indictment.  *Id*. at 8.

Petitioner filed a waiver of his right to a jury trial and tried his case, with counsel, to the court.  ECF Dkt. #8-1 at 9-10.  After the trial, the court found Petitioner guilty of both counts and all specifications charged in the indictment.  *Id.* at 11.  On December 5, 2016, the trial court sentenced Petitioner to 20 years to life after merging the counts and labeled him a Tier III sex offender/child offender.  *Id.* at 12-13.

### B.    Direct Appeal

On December 15, 2016, Petitioner, through appellate counsel, appealed to the Ohio Court of Appeals of Cuyahoga County, Eighth Appellate District. ECF Dkt. #8-1 at 14. In his appellate brief filed on June 29, 2017, Petitioner, through appellate counsel, raised the following assignments of error:

1.    APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

2.    APPELLANT WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.

ECF Dkt. #8-1 at 24-40. The State filed a brief in opposition. *Id.* at 42-63. On October 26, 2017, the court of appeals overruled each assignment of error on the merits and affirmed the judgment of the trial court. *Id.* at 64-83.

### C.    Motion for Reconsideration under Ohio R. App. Proc. 26(A)

On November 28, 2018, Petitioner pro se filed a motion for reconsideration in the appellate court pursuant to Rule 26(A) of the Ohio Rules of Appellate Procedure.  ECF Dkt. #8-1 at 84-87. Petitioner asserted that he could not timely file his notice of appeal to the Ohio Supreme Court because a brief to the Ohio Supreme Court would be "untruthful" and "impalpable" to file as his appellate counsel never responded to the alleged untruths in appellee's brief, never sent him a copy of the appellant's brief, and informed him incorrectly that the Ohio appellate court had not unanimously agreed when they had.  *Id.*  The State of Ohio filed an opposition brief, and on January 23, 2019, the Ohio appellate court denied Petitioner's motion as untimely filed.  *Id*. at 88-91.

4

Petitioner did not appeal his original appellate decision or the decision on his Rule 26(A) motion.

### D. Post-conviction Filings

After the Ohio appellate court's decision affirming his conviction and sentence, and well before he filed his Rule 26(A) motion, Petitioner filed a state petition to vacate or set aside the judgment of his conviction and sentence on November 30, 2017. ECF Dkt. #8-1 at 92-123. Petitioner asserted claims of prosecutorial misconduct in a side-bar remark during trial and intimidation in his jail cell, ineffective assistance of trial counsel, undisclosed exculpatory evidence and denials of due process concerning a witness. *Id.* The State of Ohio filed a motion a motion for summary judgment in response, asserting that Petitioner's claims were barred by the doctrine of res judicata and otherwise lacked genuine issues of material fact. *Id.* at 124-131. Petitioner thereafter filed a motion to dismiss Respondent's motion for summary judgment, arguing that the State's motion was filed untimely and did not address each of Petitioner's claims in full. *Id.* at 132-142. He then filed subsequent motions to dismiss and a letter to the court. *Id.* at 143-154.

Petitioner then filed a notice of appeal on January 2, 2018 with a brief on the merits to the Ohio appellate court. ECF Dkt. #8-1 at 188-216. Petitioner indicated that he was appealing the trial court's December 11, 2017 judgment entry denying his petition for post-conviction relief. *Id.* The State of Ohio filed a motion to dismiss Petitioner's appeal, asserting that his appeal was premature and thus was lacking an appealable order because the trial court did not issue a judgment entry on his post-conviction filings or issue findings of fact and conclusions of law. *Id.* at 218-219. On January 23, 2018, the Ohio appellate court granted the motion to dismiss Petitioner's appeal because it was prematurely filed. *Id.* at 221-222.

On February 21, 2018, Petitioner filed an amended petition to vacate or set aside his judgment of conviction and sentence. ECF Dkt. #8-1 at 155-157. He filed another amended petition on February 27, 2018. *Id.* at 158-160. The State of Ohio filed responses to the amended petitions. *Id.* at 161-163. On March 13, 2018, Petitioner filed another amended petition to vacate or set aside his judgment of conviction and sentence. *Id.* at 165-167. He also filed a reply to the State of Ohio's responses to his petition and amended petitions. *Id.* at 168-170. On March 28,

2018, Petitioner filed a "Motion for Dismissal of Defendant's Case With Prejudice." *Id*. at 175-176. Petitioner asserted that: he was innocent of the crimes with which he was convicted; he did not get a preliminary hearing on the charges; prosecutorial misconduct infected the trial; the State of Ohio fabricated facts and lied in its appellee brief on appeal; the State of Ohio tried to persuade the trial court to side with its fabrications by requesting that the court adopts its findings of fact and conclusions of law; *Brady* violations existed; the State of Ohio attempted to intimidate him after the first day of trial; the State of Ohio shunned the investigation of the Children and Family Services; and the State of Ohio implicitly coached the minor victim. *Id*. On April 3, 2018, Petitioner filed a motion in the Cuyahoga County trial court, requesting that the trial court review the policies of the Cuyahoga County Prosecutor's Office in his case and forward the findings to the United States District Court. ECF Dkt. #8-1 at 177-179. The State of Ohio filed a brief in response to Petitioner's motion for dismissal of its case and his motion to have the trial court review the prosecutor's office policies. *Id*. at 180-182.

On April 20, 2018, Petitioner filed in the trial court a petition for review of "Issues Concerning Prosecutor's Supplemental Response to Request for Discovery filing of 9/26/16: confirm 867775." ECF Dkt. #8-1 at 184-186.

On June 6, 2018, the trial court denied Petitioner's petition for post conviction relief and all of his filings, including the motion to review the practices of the prosecutor's office. ECF Dkt. #8-1 at 223. On June 18, 2018 and June 19, 2018, Petitioner filed motions for the trial court to complete its judgment entry denying his post-conviction relief petition and other filings by providing findings of fact and conclusions of law. *Id.* at 224-226.

On July 2, 2018, Petitioner pro se filed a notice of appeal of the trial court's June 6, 2018 judgment, acknowledging that the court had not yet filed findings of fact and conclusions of law. ECF Dkt. #8-1 at 227-234. He also asserted in his letter to the appellate court that the trial court's judgment entry was issued 188 days after his post-conviction relief petition was filed, which conflicted with Ohio law and the State of Ohio's motion for summary judgment was also filed beyond the time limit allowed under Ohio law. *Id*. at 234. He subsequently filed a merits brief on July 20, 2018, setting forth the following assignments of error:

Whether Trial Court Abused Its Discretion

Whether Appellant was Precluded from Filing Palpable Appeal on Merits

*Id.* at 235-252.

Meanwhile, on July 9, 2018, the trial court issued a journal entry denying Petitioner's post-conviction relief petition and any amendments to it and granted the State of Ohio's motion for summary judgment. ECF Dkt. #8-1 at 253. The trial court indicated that it had attached findings of fact and conclusions of law to its journal entry. *Id.* The findings of fact and conclusions of law were attached to the journal entry. *Id.* at 254-258. The court also issued a journal entry denying Petitioner's motion for completion of the judgment entry as moot. *Id.* at 260.

On July 23, 2018, the State of Ohio filed a motion to dismiss Petitioner's appeal in the appellate court asserting that it lacked a final appealable order. ECF Dkt. #8-1 at 262-264. On July 25, 2018, Petitioner pro se filed a motion for a new trial in the Ohio appellate court, arguing that his rights under the Fourteenth Amendment were violated when he was denied his right to a preliminary hearing on his charges in the trial court. *Id.* at 268-271.

On July 30, 2018, the Ohio appellate court issued a journal entry granting the motion to dismiss Petitioner's appeal for lack of an appealable order as the appeal was filed before the trial court had issued its findings of fact and conclusions of law. ECF Dkt. #8-1 at 266. The appellate court held that a judgment entry without findings of fact and conclusions of law is not a final appealable order and because the matter was pending on Petitioner's appeal when the trial court did issue the findings of fact and conclusions of law, the trial court lacked jurisdiction to do so. *Id.* The appellate court indicated that once the findings of fact and conclusions of law were reissued, Petitioner could file an appeal. *Id.* On July 31, 2018, the appellate court denied Petitioner's motion for a new trial as moot because his appeal was dismissed. *Id.* at 278.

On August 1, 2018, Petitioner pro se filed a motion to dismiss/motion for new trial in the Ohio appellate court alleging that the State of Ohio's appellee brief contained untruths and fabrications and his appellate counsel never sent him a copy of the transcript as he requested in order to appeal to the Supreme Court of Ohio. ECF Dkt. #8-1 at 271-273. Petitioner filed another such motion in the Ohio appellate court and a response to the State of Ohio's motion to dismiss his

7

appeal due to procedural errors and errors of the trial court in issuing their filings beyond the time limits prescribed by Ohio law. *Id.* at 275-277. The appellate court denied these filings on August 2, 2018 as moot. *Id.* at 279. Petitioner made other pro se filings in the Ohio appellate court, including a "motion" for wrongful imprisonment and claims of Brady violations. . ECF Dkt. #8-1 at 280-286. The appellate court denied all of the motions as moot since the appeal had been dismissed. *Id.* at 287.

On August 22, 2018 and August 24, 2018, Petitioner again filed motions for wrongful imprisonment, dismissal of case, violations of Sixth and Fourteenth Amendment rights, Brady claims, and improper filing dates by the trial court and the State of Ohio. ECF Dkt. #8-1 at 288-298.

On October 15, 2018, the trial court reissued its granting of the State of Ohio's motion for summary judgment and denial of Petitioner's post-conviction relief petition. ECF Dkt. #8-1 at 299. The court indicated that it had again attached its findings of fact and conclusions of law. *Id.*

Petitioner thereafter filed in the Ohio appellate court a motion to reinstate his appeal and to grant his petition for post-conviction relief. ECF Dkt. #8-1 at 306-307. On October 31, 2018, the appellate court denied Petitioner's motion. *Id.* at 308.

On November 5, 2018, the trial court issued a journal entry republished its findings of fact and conclusions of law. ECF Dkt. #8-1 at 309-310.

**E.    Mandamus**

Petitioner pro se thereafter filed a petition for a writ of mandamus in the Ohio appellate court, asserting that the trial court illegally issued is ruling on his post-conviction relief petition untimely and the State of Ohio untimely filed its motion for summary judgment as to the petition. ECF Dkt. #8-1 at 312-315. The State of Ohio filed a motion for summary judgment as to the petition, contending that Petitioner failed to comply with a plethora of Ohio laws and an Ohio rule of civil procedure before filing his civil action against a government entity. *Id.* at 316-321. The State of Ohio also asserted that Petitioner's request under the mandamus action was moot and he was not entitled to the remedy he sought by way of mandamus. *Id.* at 322. Petitioner filed a response to the motion for summary judgment. *Id.* at 352-357.

8

### F.    Federal Civil Action

The undersigned also notes that on April 2, 2018, Petitioner pro se filed a complaint in this Court pursuant to 42 U.S. § 1983 against the "Prosecutors of Cuyahoga County, Ohio." ECF Dkt. #1 in Case Number 1:18CV738. The case was assigned to the Honorable Patricia A. Gaughan and Petitioner thereafter filed two additional complaints and an amended complaint before the respondents in that case filed a motion to dismiss Petitioner's complaints for failure to state a claim and lack of jurisdiction under Rules 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure. ECF Dkt. #s 5-7 in Case No. 1:18CV738. Petitioner filed a brief in opposition to the motions. ECF Dkt. #10 in Case No. 1:18CV738. On August 20, 2018, Judge Gaughan granted the respondent's motion to dismiss. ECF Dkt. #s 12, 13, in Case No. 1:18CV738. Petitioner subsequently filed an amendment to his complaint on August 24, 2018 although his case had already been dismissed. ECF Dkt. #14 in Case No. 1:18CV738.

On November 26, 2018, Petitioner filed another writ of mandamus in the Ohio appellate court with a motion to overturn or vacate his conviction based upon the Opinion from Judge Gaughan in Case Number 1:18CV738. ECF Dkt. #8-1 at 358-363. On January 8, 2019, the Ohio appellate court denied Petitioner's writ and his motion to overturn or vacate his conviction. *Id.* at 364-374 in instant case.

### III.    FEDERAL HABEAS CORPUS PETITION UNDER 28 U.S.C. § 2254

On September 6, 2018, Petitioner pro se executed a petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254, which was filed in this Court on September 13, 2018. ECF Dkt. #1. In his petition, he presents the following grounds for relief:

> GROUND ONE: Due Process/Brady
>
> Supporting Facts: State witness C.J. whom made statement in favor of defense was not called on by State to testify although so called victim claimed she (C.J.) witnessed said crimes. Patterson did not know this exculpatory evidence existed until about six months after trial. Also, in-camera videos of so called victim (D.D.), and of Z.T.6 that were in favor of defense were suppressed purposefully or inadvertently. Prosecutors attempted to quash in-camera (case docket filing date 7-25-16). Prosecutors referenced Z.T.6 as 'another child' in direct appeal Appellee Brief in order to hide/blur her significance to defense.

9

GROUND TWO: Compulsory Process/Brady

Supporting Facts: Cuyahoga County Children and Family Services interviewed Patterson on Aug. 2nd, 2016 on behalf of prosecution. Prosecution shunned this interview as it was on Patterson's favor.

GROUND THREE: Due Process; Patterson was blatantly denied preliminary hearing

Supporting Facts: Please see pg. 5(b)(5) of this form for supporting facts.

GROUND FOUR: Ineffective Assistance of Counsel

Supporting Facts: During sentencing on 11/14/16 Patterson state for the record that attorney never subpoenaed items that he (Patterson) requested. Attorney did not refute. Patterson did not mention what the items were. Attorney also did not call on C.J. to testify although she made favorable comments on defense behalf.

ECF Dkt. #1. Petitioner made a supplemental filing elaborating on these Grounds for Relief on September 26, 2018. ECF Dkt. #4.

On February 28, 2019, Respondent filed a return of writ, and on August 9, 2019, Petitioner filed a response to the return of writ and a traverse/motion for summary judgment. ECF Dkt. #s 8, 9. Petitioner thereafter filed a letter "in Regards to Opening an Investigation into Belmont Correctional Institution on September 19, 2019. ECF Dkt. #11. On November 18, 2019, the Honorable Judge Oliver, Jr. issued an Order adopting the undersigned's interim report and recommendation that the Court deny that part of Petitioner's traverse argued as a motion for summary judgment. ECF Dkt. #s 12, 13. The Court also adopted the undersigned's interim report in which it was recommended that the Court allow the review of Petitioner's response to the return of the writ and the contents of his traverse/motion for summary judgment as his traverse. *Id.*

On December 23, 2019, Petitioner filed a "Motion to Ensure Proper Establishment of Subject Matter Jurisdiction." ECF Dkt. #14. On January 27, 2020, Petitioner filed "Further Case Law that Supports Petitioner's Habeas Corpus Petition/Response to Return of Writ/Traverse." ECF Dkt. #15.

On February 24, 2020, Petitioner filed a "Motion for bond." ECF Dkt. #16. Respondent filed a response in opposition to the motion on March 13, 2020. ECF Dkt. #18.

On April 6, 2020, Petitioner filed a "Motion to Expedite Judgment Due to Unforeseen Circumstances." ECF Dkt. #19. He filed a "Supplement" to this motion and his motion for bond

10

on April 10, 2020.  ECF Dkt. #20.  On April 13, 2020, Respondent filed a brief in opposition to the motion to expedite judgment and to the supplement.  ECF Dkt. #21.  Petitioner filed a reply on April 22, 2020.  ECF Dkt. #22.  Petitioner filed an amended "Motion to Expedite Judgment Due to Unforeseen Circumstances" on May 29, 2020.  ECF Dkt. #23.

**IV.**    **APPLICABLE LAW**

**A.**    **Procedural Barriers to Review**

A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a federal writ of habeas corpus. Justice O'Connor noted in *Daniels v. United States*: "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." 532 U.S. 374, 381 (2001) (citing *United States v. Olano*, 507 U.S. 725, 731 (1993)).

**1.**    **Statute of Limitations**

The AEDPA statute of limitations period for filing a petition for a writ of federal habeas corpus is one year, and it begins to run on the date judgement became final. 28 U.S.C. § 2244(d)(1). The AEDPA statute of limitations is not at issue in this case.

**2.**    **Exhaustion of State Remedies**

Subject to the statute of limitations, federal habeas corpus relief is only available to persons that are in custody in violation of the United States Constitution, laws or treaties. 28 U.S.C. § 2254(a); *Engle v. Isaac*, 456 U.S. 107 (1982); *Smith v. Phillips*, 455 U.S. 209, 221 (1983). As a general rule, a state prisoner must exhaust all possible state remedies or have no remaining state remedies before a federal court will review a petition for a writ of habeas corpus. 28 U.S.C. § 2254(b) and (c); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *Wilson v. Mitchell*, 498 F.3d 491, 498 (6th Cir. 2007). Exhaustion is required before a state prisoner may bring a habeas corpus petition under either 28 U.S.C. § 2241 or 28 U.S.C. § 2254. *See Collins v. Million*, 121 Fed.Appx. 628, 630-31 (6th Cir. 2005). The petitioner bears the burden of proving exhaustion. *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). Also, the court of appeals may raise and consider the issue of exhaustion *sua sponte*. *Clinkscale v. Carter*, 375 F.3d 430, 438 (6th Cir. 2004) (citing *Harris v. Rees*, 794 F.2d 1168, 1170 (6th Cir. 1986)). Exhaustion does not require a state court adjudication

11

on the merits of the claim at issue. *Clinkscale*, 375 F.3d at 438 (citing *Smith v. Digmon*, 434 U.S. 332, 333 (1978); *Manning v. Alexander*, 912 F.2d 878, 883 (6th Cir. 1990)).

The exhaustion requirement is satisfied "once the federal claim has been fairly presented to the state courts," which means "the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims." *Smith v. State of Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 430 (6th Cir. 2006) (citing *Lott v. Coyle*, 261 F.3d 594, 608 (6th Cir. 2001)); *see O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *Wilson v. Mitchell*, 498 F.3d 491, 498-99 (6th Cir. 2007); *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990); *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987). A petitioner will not be allowed to present claims never before presented in the state courts, unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal, or that he is actually innocent of the crime for which he was convicted. *Coleman v. Thompson*, 501 U.S. 722, 748 (1991) (citing *Engle v. Isaac*, 456 U.S. 107 (1982) and *Murray v. Carrier*, 477 U.S. 478 (1986)).

In addition to full presentation, a claim must also be fairly presented to the state courts as a federal constitutional issue rather than merely as a state law issue. *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987); *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984). To exhaust a claim, a petitioner must present it to the state courts under the same theory that it is later presented in federal court. *Wagner v. Smith*, 581 F.3d 410, 417 (6th Cir. 2009); *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000); *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998). For a claim to be "fairly presented," the petitioner must assert both a factual and legal basis for his claim in state court. *Fulcher v. Motley*, 444 F3d 791, 798 (6th Cir. 2006). A petitioner "fairly" presents the substance of his federal constitutional claim to the state courts by: (1) relying upon federal cases that use a constitutional analysis; (2) relying upon state cases using a federal constitutional analysis; (3) phrasing his claim in terms of constitutional law or in terms sufficiently particular to allege the denial of a specific constitutional right; or (4) alleging facts that are obviously within the mainstream of constitutional law. *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004) (internal citation omitted); *McMeans*, 228 F.3d at 681 (citing *Franklin*, 811 F.2d at 326). Although general

12

allegations of the denial of rights to a "fair trial" and "due process" do not "fairly present" claims that specific constitutional rights were violated, a petitioner is not required to recite "book and verse on the federal constitution." *Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006), quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003).

Originally, the Supreme Court interpreted 28 U.S.C. § 2254 as providing that if a petitioner did not fulfill the total exhaustion requirement, a district court *must* dismiss the habeas petition, even if it contained both unexhausted and exhausted claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 852 (1999) (emphasis added) (citing *Rose v. Lundy*, 455 U.S. 509, 522 (1982)); *cf.* 28 U.S.C. § 2254(b)(2) (stating that "a[n] application for a writ of habeas corpus *may* be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.") (emphasis added). However, the Supreme Court became concerned about petitioners losing their opportunity for federal review when the AEDPA, which was enacted in 1996, included a one-year statute of limitations. *See Rhines v. Weber*, 544 U.S. 269, 274-75 (2005). Citing *Rhines*, the Sixth Circuit laid out the options that a district court may pursue in dealing with a mixed petition that contains unexhausted claims:

> When faced with this predicament in the past, we have vacated the order granting the writ and remanded the case to the district court so that it could do one of four things: (1) dismiss the mixed petition in its entirety, *Rhines*, 544 U.S. at 274, 125 S.Ct. 1528; (2) stay the petition and hold it in abeyance while the petitioner returns to state court to raise his unexhausted claims, *id*. at 275, 125 S.Ct. 1528; (3) permit the petitioner to dismiss the unexhausted claims and proceed with the exhausted claims, *id.* at 278, 125 S.Ct. 1528; or (4) ignore the exhaustion requirement altogether and deny the petition on the merits if none of the petitioner's claims has any merit, 28 U.S.C. § 2254(b)(2).

*Harris v. Lafler*, 553 F.3d 1028, 1031-32 (6th Cir. 2009) (citing *Rockwell v. Yukins*, 217 F.3d 421, 425 (6th Cir. 2000)).

The AEDPA, as amended, provides that "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C.A. § 2254(b)(2). Even assuming a state court remedy is available, the District Court may nevertheless consider a petitioner's unexhausted claim if the claim lacks merit and returning to state court "would amount to a mere futility." *Lott v. Coyle*, 261 F.3d 594, 608 (6th Cir. 2001); *Rhines v. Weber*, 544 U.S. 269, 277 (2005).

13

### 3. Procedural Default

The procedural default doctrine serves to bar review of federal claims that a state court has declined to address when a petitioner does not comply with a state procedural requirement. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). In these cases, "the state judgment rests on independent and adequate state procedural grounds." *Coleman v. Thompson*, 501 U.S. 722, 730 (1991). For purposes of procedural default, the state ruling with which the federal court is concerned is the "last explained state court judgment." *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis removed)). Absent either cause and prejudice or a finding of actual innocence, a federal court is not required to reach the merits of claims that have been procedurally defaulted in state court by a state prisoner or in federal court by a federal prisoner in a defendant's direct criminal appeal. *See Reed v. Farley*, 512 U.S. 339, 354-55 (1994); *William v. Anderson*, 460 F.3d 789, 805-06 (6th Cir. 2006); *Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006); *Harbison v. Bell*, 408 F.3d 823, 830 (6th Cir. 2005). Also, when the last explained state court decision rests upon procedural default as an "alternative ground," a federal district court is not required to reach the merits of a habeas petition. *McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991). On the other hand, the Supreme Court has held that federal courts are not always required to address a procedural default issue before deciding against the petitioner on the merits. *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("We do not mean to suggest that the procedural-bar issue must invariably be resolved first; only that it ordinarily should be. Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."). The Sixth Circuit has endorsed this view in *Hudson v. Jones* and proceeded to the merits in a habeas corpus proceeding when the question of procedural default presented a complicated question of state law and was unnecessary to the disposition of the case. *Hudson v. Jones*, 351 F.3d 212, 215-16 (6th Cir. 2003); *accord Mahdi v. Bagley*, 522 F.3d 631, 635 (6th Cir. 2008), *as amended* (July 7, 2008).

In determining whether a state court has addressed the merits of a petitioner's claim, federal courts will apply a presumption that there is no independent and adequate state grounds for a state

14

court decision when the decision "fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion." *Coleman v. Thompson*, 501 U.S. 722, 735 (1991) (citing *Michigan v. Long*, 463 U.S. 1032, 1040-41 (1983)); *see also Harris v. Reed*, 489 U.S. 255, 262-63 (1989) (holding that the "plain statement" rule of *Michigan v. Long* applies to federal habeas review). However, the presumption:

> does not apply if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred. In such a case there is a procedural default for purposes of federal habeas regardless of the decision of the last state court to which the petitioner actually presented his claims.

*Coleman*, 501 U.S. at 735 n.1; *see Lovins v. Parker*, 712 F.3d 283, 295 (6th Cir. 2013) (citing *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir.2006)) ("[A] claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule.").

Prior to the Supreme Court's ruling in *Coleman*, the Sixth Circuit Court of Appeals established a four-pronged analysis to determine whether a claim has been procedurally defaulted. *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986). Under the *Maupin* test, a reviewing court must decide:

(1)  whether the petitioner failed to comply with an applicable state procedural rule;

(2)  whether the state courts actually enforced the state procedural sanction;

(3)  whether the state procedural bar is an "adequate and independent" state ground in which the state can foreclose federal review; and

(4)  if the above are met, whether the petitioner has demonstrated "cause" and "prejudice."

*Id.* at 138.

Under the first prong of *Maupin*, there must be a firmly established state procedural rule applicable to the petitioner's claim and the petitioner must not have complied with the rule. *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (state procedural bar that is not "firmly established and regularly followed" cannot serve to bar federal judicial review); *Franklin v. Anderson*, 434 F.3d 412, 418-20 (6th Cir. 2006). The question of whether a state procedural rule was "firmly established and regularly followed" is determined as of the time at which it was to be applied. *Richey v.*

15

*Mitchell*, 395 F.3d 660, 680 (6th Cir. 2005), *vacated on other grounds in Bradshaw v. Richey*, 546 U.S. 74 (2005), *remanded to Richey v. Bradshaw*, 498 F.3d 344 (6th Cir. 2007); *Franklin*, 434 F.3d at 420.

Under the second prong, the last-explained state court to which the petitioner sought review must have invoked the procedural rule as a basis for its decision to reject review of the prisoner's federal claims. *See Coleman v. Thompson*, 501 U.S. 722, 729-30, 735 (1991); *Baze v. Parker*, 371 F.3d 310, 320 (6th Cir. 2004) (if a state court does not expressly rely on a procedural deficiency, then a federal court may conduct habeas review); *Gall v. Parker*, 231 F.3d 265, 310 (6th Cir. 2000) (even if issue is not raised below, where state supreme court clearly addresses the claim, no procedural bar arises) (superseded by statute as stated in *Parker v. Matthews*, 567 U.S. 37 (2012) on different grounds); *Boyle v. Million*, 201 F.3d 711, 716-17 (6th Cir. 2000) (where a state appellate court characterizes its earlier decision as substantive, the earlier decision did not rely on a procedural bar; therefore, the cause and prejudice test does not apply). Although the Sixth Circuit has required express reliance on a procedural bar in the past, *see Baze*, 371 F.3d at 320, it has also assumed such reliance when the decision "fairly appears to rest on state law." *Smith v. Warden, Toledo Corr. Inst.*, No. 17-3220, 2019 WL 2518311, at *11 (6th Cir. June 18, 2019) (citing *Coleman*, 501 U.S. at 740).

Under the third prong, a state judgment invoking the procedural bar must rest on a state law ground that is both independent of the merits of the federal claim and is an adequate basis for the state court's decision. *Wilson v. Mitchell*, 498 F.3d 491, 499 (6th Cir. 2007); *Munson v. Kapture*, 384 F.3d 310, 313-14 (6th Cir. 2004); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

Under the fourth prong, a claim that is procedurally defaulted in state court will not be reviewable in federal habeas corpus, unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 751. "Cause" is a legitimate excuse for the default, and "prejudice" is actual harm resulting from the alleged constitutional violation. *Geneva v. Lazaroff*, 77 Fed.Appx. 845, 850 (6th Cir. 2003); *see also Murray v. Carrier*, 477 U.S. 478, 488 (1986) (Demonstrating "the existence of cause for a

16

procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."). If a petitioner fails to show cause for his procedural default, the reviewing court need not address the issue of prejudice. *Smith v. Murray*, 477 U.S. 527 (1986); *Geneva*, 77 Fed.Appx. at 850. A petitioner can also show that a fundamental miscarriage of justice will occur if the Court does not address his procedurally defaulted ground for relief. *Schlup v. Delo*, 513 U.S. 298, 321 (1995); *Coleman*, 501 U.S. at 750. The Supreme Court described the fundamental miscarriage of justice exception as follows:

> To ensure that the fundamental miscarriage of justice exception would remain "rare" and would only be applied in the "extraordinary case," while at the same time ensuring that the exception would extend relief to those who were truly deserving, the Court explicitly tied the miscarriage of justice exception to the petitioner's innocence.

*Schlup*, 513 U.S. at 321. Simply stated, a federal court may review federal claims:

> that were evaluated on the merits by a state court. Claims that were not so evaluated, either because they were never presented to the state courts (i.e., exhausted) or because they were not properly presented to the state courts (i.e., were procedurally defaulted), are generally not cognizable on federal habeas review.

*Bonnell v. Mitchel,* 301 F.Supp.2d 698, 722 (N.D. Ohio 2004). In addition, the Sixth Circuit recognized Ohio's rule that claims must be raised on direct appeal, if possible, or else res judicata bars their litigation in subsequent proceedings. *McGuire v. Warden, Chillicothe Corr. Inst.*, 738 F.3d 741, 751 (6th Cir. 2013) (citing *State v. Perry*, 226 N.E.2d 104, 108 (1967)). The above standards apply to the Court's review of Petitioner's claims.

### B.    Standard of Review

If Petitioner's claims overcome the procedural barriers of time limitation, exhaustion and procedural default, the AEDPA governs this Court's review of his case because Petitioner filed his petition well after the Act's effective date of April 26, 1996. *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112 (1998); *see* ECF Dkt. #1-2. As previously stated, under Section 2254, a state prisoner is entitled to relief if he is held in custody in violation of the United States Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(d).

17

The AEDPA sets forth the standard of review for the merits of a petition for a writ of habeas corpus. The AEDPA provides the following deferential standard of review:

> (d)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

> (1)    resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States; or

>> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (emphasis added). In *Williams v. Taylor*, the Supreme Court clarified the language of 28 U.S.C. §2254(d) and stated:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct principle to the facts of the prisoner's case.

529 U.S. 362, 412-13 (2000). Furthermore, the Supreme Court declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.*; *see Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001); *Earhart v. Konteh*, 589 F.3d 337, 343 (6th Cir. 2009).

The Sixth Circuit Court of Appeals offers the following guidelines for applying the AEDPA limitations:

> A.    Decisions of lower federal courts may not be considered.

> B.    Only the holdings of the Supreme Court, rather than its dicta, may be considered.

> C.    The state court decision may be overturned only if:

18

1.  It '[applies] a rule that contradicts the governing law set forth in [Supreme Court of the United States] cases,' [the Supreme Court precedent must exist at the time of petitioner's direct appeal] or;

2.  the state-court decision 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent;' or

3.  'the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case;' or

4.  the state court 'either unreasonably extends a legal principle from [a Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'

D.  Throughout this analysis the federal court may not merely apply its own views of what the law should be. Rather, to be overturned, a state court's application of Supreme Court of the United States precedent must also be objectively unreasonable.  That is to say, that 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.' 'An unreasonable application of federal law is different from an incorrect or erroneous application of federal law.'

E.  Findings of fact of the state courts are presumed to be correct. 'The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'

*Bailey v. Mitchell*, 271 F.3d 652, 655-56 (6th Cir. 2001) (internal citations omitted); *see Casnave v. Lavigne*, 169 Fed.Appx. 435, 438-39 (6th Cir. 2006).

Finally, a reviewing federal court is bound by the presumption of correctness, under which the federal court is obligated to "accept a state court's interpretation of the state's statutes and rules of practice." *Hutchinson v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984), *cert. denied*, 469 U.S. 1221 (1985); *see Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986). The presumption of correctness is set forth in 28 U.S.C. § 2254(e), which provides:

(e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

19

28 U.S.C. § 2254(e). The presumption of correctness applies to basic, primary, or historical facts, and not to mixed questions of law and fact. *Thompson v. Keohane*, 516 U.S. 99, 107-12 (1995). The presumption also applies to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility." *Id.*; *see McMullan v. Booker*, 761 F.3d 662, 671 (6th Cir. 2014) (citing *Thompson*, 516 U.S. at 111). Furthermore, a reviewing federal court is not free to ignore the pronouncement of a state appellate court on matters of law. *See Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676, n.4 (6th Cir. 2000). Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## V.      LAW AND ANALYSIS

### A.      Motion to Ensure Proper Establishment of Subject Matter Jurisdiction filed by Petitioner (ECF Dkt. #14)

On December 23, 2019, Petitioner filed the above motion indicating that he was challenging this Court's subject matter jurisdiction over his case. ECF Dkt. #14.  However, in the body of the motion, Petitioner actually appears to be requesting a certified copy of a police complaint/affidavit that was not included in the State's exhibits attached to the Return of Writ, which was furnished to Petitioner.  *Id*. at 1.  Petitioner asserts that an unsworn complaint is void and renders his state court conviction void.  *Id*. at 2.

The Court DENIES Petitioner's "Motion to Ensure Proper Establishment of Subject Matter Jurisdiction."  ECF Dkt. #14.  The request for a certified copy of a police complaint and an allegation of whether it is a sworn complaint has nothing to do with whether this federal habeas corpus Court has proper subject matter jurisdiction over the instant case.  Petitioner has filed an action pursuant to 28 U.S.C. § 2254 alleging that Respondent, the warden who has physical custody of him by way of imprisonment under state law, should release him because he is being unlawfully held in violation of the United States Constitution or law and treaties of the United States.  *See* 28 U.S.C. § 2254(a).  Petitioner is making such allegations in the instant action and subject matter jurisdiction is therefore appropriate.

20

**B.** **Grounds for Relief**

The undersigned takes Petitioner's Grounds for Relief out of order based upon Respondent's assertions and a more logical discussion.

**1.** **Ground for Relief Number 3**

In his third ground for relief, Petitioner asserts that his due process rights were violated because he was "blatantly" denied a preliminary hearing. ECF Dkt. #1 at 8. He alleges that he requested a preliminary hearing at his initial appearance, which "was not held pursuant to an indictment." *Id.* at 4. He submits that he was driven to jail on the day that he requested the preliminary hearing, May 28, 2016, and he was housed there for 9 days. *Id.* at 4. He asserts that he was indicted on June 3, 2016 and was told when he was brought to the Cuyahoga County Jail on June 6, 2016 that he was no longer entitled to a preliminary hearing. *Id.*

Respondent asserts that Petitioner's third ground for relief is not cognizable before this Court and is procedurally defaulted. ECF Dkt. #8 at 12-14. The undersigned recommends that the Court find that Petitioner's third ground for relief is not cognizable in federal habeas corpus review.

The Sixth Circuit has held that there is no federal constitutional right to a preliminary hearing. *Dillard v. Bomar*, 342 F.2d 789, 790 (6th Cir. 1965). In Dillard, the Sixth Circuit stated that "We do not find that the Supreme Court has ever held that an accused has a constitutional right to a preliminary hearing." *Id.* The *Dillard* Court cited to United States Supreme Court cases that it construed as holding that there is no constitutional right to a preliminary hearing and the Sixth Circuit cited to a number of its own cases holding that there is no such right. *Id.*(citing cases). In *Chappell v. Morgan*, the Sixth Circuit reiterated its holding that there is not a constitutional right to a preliminary hearing. No. 17-3224, 2017 WL 3973960, at *2 (6th Cir. Aug. 16, 2017), unpublished. Accordingly, the undersigned recommends that the Court find that this ground for relief is not cognizable because there is not a constitutional right to a preliminary hearing.

**2.** **Ground for Relief Number 2**

Respondent contends that Petitioner has procedurally defaulted his second ground for relief

21

because he did not fairly present the same claim that he presents in this ground for relief to the state courts and *res judicata* bars him from returning to the state courts in order to fairly present it to them. ECF Dkt. #8 at 14. The undersigned agrees and recommends that the Court find that Petitioner has procedurally defaulted his second ground for relief.

In Ground for Relief Number 2 before this Court, Petitioner asserts that the Cuyahoga County Children and Family services interviewed him on August 2, 2016 "on behalf of" the prosecution and the prosecution then "shunned" this interview because it was in his favor. ECF Dkt. #1 at 7. He asserts this as a compulsory process/*Brady* violation by the prosecution. *Id*. In his "Response to the Return of Writ," Petitioner concedes that he first raised a claim about the interview in a state post-conviction relief petition, but he raised it as a claim for ineffective assistance of counsel by not subpoenaing the records on the interview and not as a compulsory process/*Brady* claim against the prosecution. ECF Dkt. #9 at 5. He states that, "(Note: Patterson concedes that his interview with Children and Family Services that the State chose not to use against him, although they behested the interview, was first mentioned in a claim of ineffective assistance in PCR petition." *Id*. at 6.

The undersigned recommends that the Court find that Petitioner has procedurally defaulted this ground for relief. In order to exhaust a claim, a petitioner must present it to the state courts under the same theory that he presents it in his federal habeas corpus petition. *Wagner,* 581 F.3d at 417; *McMeans,* 228 F.3d at 681; *Wong*, 142 F.3d at 322. 0, oovember 3post-conviction relief petition filed on November 30, 2017, Petitioner asserted the ineffective assistance of trial counsel as his second claim for relief and for the most part, he discussed counsel's alleged ineffectiveness in failing to subpoena his phone records and in failing to subpoena the victim's school records which he alleged would have helped him at trial. ECF Dkt. #8-2 at 96. In the last sentence of this claim, Petitioner does mention his interview with Children and Family Services, but he does so in relation to counsel's ineffectiveness in failing to speak to the man who interviewed him from that agency on August 2, 2016. *Id*. Before this Court, Petitioner alleges a compulsory process/*Brady* violation and appears to allege that the prosecution committed such violations by "shunning" the

22

August 2, 2016 interview record because it was favorable to him. These are certainly different claims. Since Petitioner has failed to exhaust in the state courts the ground for relief that he brings before this Court, and he can no longer return to the state courts in order to do so, he has procedurally defaulted this ground for relief.

The undersigned notes that in his November 30, 2017 post-conviction relief petition, Petitioner mentions that he filed a motion for a new trial on October 19, 2016 and an amended motion for a new trial on November 3, 2016. ECF Dkt. #8-1 at 94. The trial court's docket sheets reflect such filings. *Id.* However, neither of these filings are in the record and Petitioner does not attach them to any of his filings in this Court or in the state court. Moreover, in his November 30, 2017 petition, Petitioner admits that he raised a claim of prosecutorial misconduct, but only in conjunction with the side-bar statements of the prosecution and alleged confrontations in his cell concerning a plea bargain. *Id.* at 94. Petitioner further concedes that while he also raised the ineffective assistance of counsel in the 2016 new trial motions, his issues concerned counsel's failures to subpoena his phone records and the victim's school records, and counsel's failure to speak to the man who interviewed him from Children and Family Services on August 2, 2016. *Id.* at 95. Thus, even accepting these earlier filings, Petitioner still did not present the same theory of prosecutorial misconduct that he presents before this Court concerning not providing him with a record of his interview with the man from Children and Family Services.

### 3.     Petitioner's Grounds for Relief Numbers 1 and 4

Respondent contends that Petitioner has also failed to fairly present and procedurally defaulted his first and fourth grounds for relief. ECF Dkt. #8 at 14-19. Respondent explains that if Petitioner presented one or more of these issues in his direct appeal, the Ohio appellate court informed him that to the extent he was relying on evidence *de hors* the record, he was required to bring those issues before the trial court in a post-conviction relief petition. *Id.* Respondent asserts that Petitioner did not present these issues in his post-conviction relief petition and cannot do so now due to *res judicata*. *Id.* Respondent further asserts that even if these claims were raised in his post-conviction relief petition, the last state court to rule on the claims held that they were not based

23

on evidence *de hors* the record and thus he should have raised them on direct review and therefore they were barred by *res judicata* because he should have but did not raise them direct review.  *Id*. Respondent also points out that even if properly presented in the post-conviction petition, Petitioner never filed a direct appeal of the denial of his post-conviction petition and cannot do so now.  *Id*.

In his first ground for relief, Petitioner asserted "Due Process/Brady" and alleged in his supporting facts that "in-camera videos of so called victim (D.D.), and of Z.T.6. that were in favor of defense were suppressed purposefully or inadvertently.  Prosecutors attempted to quash in-camera (case docket filing date 7-25-15).  Prosecutors reference Z.T.6 as 'another child' in direct appeal Appellee Brief in order to hide/blur her significance to defense."  ECF Dkt. #1 at 5. Petitioner also contended that he did not know that this "exculpatory" evidence existed concerning the favorable statements of C.J.  *Id*.  In his fourth ground for relief, Petitioner alleged the "Ineffective Assistance of Counsel," and in his "Supporting Facts," he asserted that during his sentence, he stated on the record that his counsel did not subpoena items that Petitioner requested. *Id.* He further mentioned that "Attorney also did not call on C.J. to testify although she made favorable comments on defense behalf.3" *Id*. at 10.

When the federal habeas corpus petition form asked why Petitioner did not exhaust his state remedies for Ground for Relief Numbers 1 and 4, Petitioner wrote for the first ground that he was "stymied from appealing (two attempts were made) as trial court has not served him with findings and conclusions in regards to Post-Conviction Relief."  ECF Dkt. #1 at 5. In response to the same exhaustion question for Ground for Relief Number 4, Petitioner answered, "Same as Ground One, and Two."  *Id*. at 10.  Thus, Petitioner acknowledges that he failed to exhaust these grounds for relief.

The record confirms his lack of exhaustion.  In his direct appeal, Petitioner mentioned the witness C.J. in his second assignment of error, but he presented the issue as one relating to the ineffective assistance of counsel only.  ECF Dkt. #8-1 at 39.  He mentioned C.J. again as a witness in "Reason V" in his Rule 26(A) motion for reconsideration before the Ohio appellate court, but only in the context of the trial court acknowledging contradictions allegedly made by C.J. in her

24

statements. *Id*. at 85. Thus, to the extent that he should have raised the issue that he presents to the Court regarding the prosecution's failure to call C.J. as a witness because it was not evidence *de hors* the record, the undersigned recommends that the Court find that he has failed to exhaust the issue.

Concerning evidence *de hors* the record, giving Petitioner the benefit of the doubt, the undersigned recommends that the Court find that Petitioner did raise an issue concerning C.J. that somewhat resembles the instant first and fourth grounds for relief in his first petition for post-conviction relief. In his third claim of that petition, he asserted "Undisclosed Exculpatory Evidence/A Denial of Due Process," and alleged that "Witness C.J. for the State conveyed that she did not see the said events take place. According to the so called victim, this witness (C.J.) was juxtapose to him when the said events occured[sic] and even saying things to petitioner while it was happening (T. 371). Yet this witness of the State has said she saw nothing happen." ECF Dkt. #8-1 at 9. He also alleged that his counsel was ineffective for failing to call on C.J. to testify when she had made comments favorable to him. *Id*. at 10.

However, even accepting that he did raise similar issues surrounding C.J. as a witness in his first post-conviction relief petition and ineffective assistance of counsel regarding the failure to call C.J. as a witness and to subpoena items, Petitioner nevertheless failed to properly appeal the ultimate denial of that petition to the Ohio appellate court. Petitioner's first appeal to that court was premature as the trial court had not yet decided his case. ECF Dkt. #8-1 at 188-217. The Ohio appellate court dismissed his appeal as premature, specifically indicating that the trial court had not yet ruled on his petition. *Id.* at 221. The trial court then issued a ruling denying Petitioner's post-conviction relief petition, and other motions, but did not issue findings of fact and conclusions of law. *Id*. at 223. Again, Petitioner filed a notice of appeal and brief, and after the State of Ohio filed a motion to dismiss the appeal, the Ohio appellate court again dismissed the appeal because it was filed before the trial court issued its findings of fact and conclusions of law. *Id*. at 227-252, 266. The trial court had issued its findings of fact and conclusions of law on July 9, 2018, and Petitioner had filed his notice of appeal on July 2, 2018. *Id.* at 227, 253. However, the Ohio appellate court

held that because the matter was pending on appeal when the trial court issued its findings of fact and conclusions of law, the trial court lacked jurisdiction to enter them.  *Id*. at 266.  The Ohio appellate court indicated that once the trial court re-issued the findings of fact and conclusions of law, Petitioner could file an appeal.  *Id*.  Petitioner thereafter filed a motion for new trial and a motion to dismiss or grant a new trial in the Ohio appellate court, which that court denied as moot because the appeal had been dismissed.  *Id*. at 271-279.  Sometime in August 2018, Petitioner then filed a number of motions to dismiss/wrongful imprisonment and supplemental documents in the Ohio appellate court.  *Id*. at 280-298.

Yet it was not until October 15, 2018 when the trial court filed its re-issued its findings of fact and conclusions of law.  ECF Dkt. #8-1 at 299-305.  Rather than file a notice of appeal, Petitioner instead filed a motion requesting reinstatement of his appeal and the granting of his post-conviction relief petition because the trial court did not serve him with the signed findings of fact and conclusions of law.  *Id*. at 306-307.  The Ohio appellate court denied the motion.  *Id.* at 308.  On November 5, 2018, the trial court issued a republishing of its findings of fact and conclusions of law.  *Id.* at 309.  Again, rather than file a notice of appeal, Petitioner filed a petition for a writ of mandamus in the Ohio appellate court.  *Id*. at 311.  He thereafter filed a motion to overturn or vacate his conviction in the Ohio appellate court on November 28, 2018.  *Id*. at 358.

On January 9, 2019, the Ohio appellate court denied Petitioner's petition for a writ of mandamus, holding that besides the procedural irregularities that could have resulted in the dismissal of the petition, Petitioner's requests of the appellate court were not proper for mandamus and he had an adequate remedy by way of appeal of the trial court's order denying his petition.  ECF Dkt. #8-1 at 371.  The court held that, "Appeal is the appropriate means to address Patterson's grievances about the denial of his postconviction petition."  *Id*. at 372.  The Ohio appellate court also denied Petitioner's motion to overturn or vacate his conviction, holding that it lacked jurisdiction to do so as such a filing must be made in the trial court.  *Id.* at 373.  Petitioner never filed an appeal of the trial court's findings of fact or conclusions of law, even after they were re-published on November 5, 2018.  He had 30 days, pursuant to Rule 4(A) of the Ohio Rules of

Appellate Procedure, in which to do so. Thus, Petitioner was not prevented from filing an appeal of the trial court's denial of his post-conviction relief petition, as he asserts in his federal habeas corpus petition. He filed two appeals that were premature and did not file an appeal of his post-conviction relief petition at the proper time. He cannot return to the Ohio court to do so as Ohio law does not allow delayed appeals of collateral matters, such as post-conviction relief petition determinations. *See State v. Nichols*, 11 Ohio St.3d 40, 43, 463 N.E.2d 375, 11 O.B.R. 188 (1984).

The *Maupin* factors of procedural default are met. The first two are met as Petitioner failed to comply with the Ohio appellate court's rule of filing a timely appeal of the trial court's denial of his post-conviction relief petition and Ohio courts enforce that doctrine as the Ohio does not allow delayed appeals from post-conviction relief petition denials. *Fetherolf v. Chillicothe Corr. Inst.*, No. 2:19CV168, 2020 WL 605928, at *24 (S.D. Ohio Feb. 7, 2020), citing Brown v. Clipper, No. 5:14CV1406, 2016 WL 5173331, at *23 (N.D. Ohio Mar. 8, 2016); Ohio R. App. P. 5(A). The third *Maupin* factor is also met because Rule 5(A) does not apply to civil cases, and specifically post-conviction relief proceedings, and this is firmly established and regularly followed by the Ohio courts. *Fetherolf*, 2020 WL 605928 at 24, citing and quoting *Carley v. Hudson*, 563 F.Supp.2d 7609, 776 (N.D. Ohio 2008); *State v. Williams*, No. 06AP-842, 2006 WL 2949011, at *1 (Ohio Ct. App. Oct. 17, 2006); *State v. Johnson*, 2007 WL 2983890, at *1 (Ohio Ct. App. Oct. 15, 2007); *Nichols*, 11 Ohio St.3d at 43). For these reasons, the undersigned recommends that the Court find that Petitioner's first and fourth grounds for relief are barred by procedural default.

### 4.    Cause and Prejudice/Miscarriage of Justice

Petitioner can avoid the application of procedural default to the his first, third and fourth grounds for relief if he can show cause to excuse his default and resulting prejudice if his federal constitutional claims are not reviewed. "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him[;]...some objective factor external to the defense [that] impeded...efforts to comply with the State's procedural rule." *Coleman v. Thompson*, 501 U.S. 722, 753, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

As cause for his procedural default, Petitioner asserts only that he was "stymied" from properly appealing due to violations and improprieties at the State level proceedings and because the trial court failed to provide him with a copy of a final appealable order.  ECF Dkt. #9 at 7. However, Petitioner's failure to perfect his appeal was due to his own failure to file the proper notice of appeal as he instead chose to file a motion for reinstatement of his appeal after the appeal had already been dismissed and to file a motion for a new trial when the appellate court had no jurisdiction to consider such a motion.  The appellate court informed Petitioner when it dismissed his premature appeal to file an appeal after the trial court republished its final order.  For these reasons, the undersigned recommends that the Court find that Petitioner has failed to present sufficient cause in order to escape the procedural default bar.

Finally, Petitioner can alternatively avoid the bar of procedural default if he can assert a miscarriage of justice.  A fundamental miscarriage of justice is shown when one is convicted who is "actually innocent."  *Coleman*, 501 U.S. at 750.  Petitioner contends in his September 19, 2019 letter to the Court that he has been convicted of a crime that he did not actually commit.  ECF Dkt. #11 at 2.  In order to be credible, Petitioner must show "new reliable evidence –whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial."  Further, "[a]ctual innocence means factual innocence, not mere legal insufficiency." *Bousley v. U.S.*, 523 U.S. 614, 623-624, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998), citing *Sawyer v. Whitley*, 505 U.S. 333, 339, 112 S.Ct. 2514, 2518-2519, 120 L.Ed.2d 269 (1992). Petitioner does not elaborate in his September 19, 2019 letter as to how or why he is innocent. Further, while Petitioner asserted that calling C.J. as a witness in his bench trial would have presented exculpatory evidence because she would have testified that she did not see anything happen, this testimony does not establish Petitioner's actual innocence because this testimony of one witness does not mean that Petitioner did not commit the crimes.  At trial, D.D., the victim, actually testified, as did C.T., M.S., D.N. Z.T, Officer Kubiak, Officer Hess and Detective Vowell. *Id*.  Without more, the undersigned recommends that the Court find that Petitioner fails to establish his actual innocence.

28

## VI.      CONCLUSION AND RECOMMENDATION

For the above reasons, the undersigned RECOMMENDS that the Court deny Petitioner's "Motion to Ensure Proper Establishment of Subject Matter Jurisdiction."  ECF Dkt. #14.  The undersigned further recommends that the Court decline to review all of Petitioner's grounds for relief because they are either not cognizable before this Court or are procedurally defaulted. Therefore, the undersigned RECOMMENDS that the Court DISMISS Petitioner's § 2254 federal habeas corpus petition (ECF Dkt. #1) in its entirety WITH PREJUDICE. Consequently, the undersigned further recommends that the Court DENY AS MOOT Plaintiff's motion for bond, and his two motions to expedite judgment due to unforeseen circumstances.  ECF Dkt. #s 16, 19, 23.

DATE: June 26, 2020                           _/s/ George J. Limbert_____
                                               GEORGE J. LIMBERT
                                               UNITED STATES MAGISTRATE JUDGE

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. L.R. 72.3(b).